## AMERICAN R. CO. OF PORTO RICO v. LOPEZ.

(Circuit Court of Appeals, First Circuit. December 5, 1924. Rehearing Denied January 2, 1925.)

No. 1675.

**1. Exceptions, bill of ⬅️32(3)—Acting judge of District Court for Porto Rico may sign bill of exceptions in cause tried before regular judge.**

Under Organic Act Porto Rico March 2, 1917, § 41 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803qq), authorizing the President to designate one of the judges of the Supreme Court of Porto Rico to act as judge of the District Court of the United States for Porto Rico during the absence or disability of the regular judge, such acting judge *held* to have authority to sign a bill of exceptions in a cause tried before the regular judge.

**2. Railroads ⬅️307(4)—Company held required by statute to maintain gates at crossings; "insular roads."**

Under Pol. Code Porto Rico, § 397, defining "insular roads" as including such highways or roads as are included in the general plan of roads to be built and maintained by insular funds, a part of a municipal road taken over by legislative act as a part of the insular system, and which was then being maintained by the Interior Department, *held* an "insular road,"

within the meaning of the Railroad Law of Porto Rico of March 9, 1911, § 12, requiring railroads to "construct and maintain chains, gates or other suitable protective devices at all crossings of insular public roads."

**3. Railroads ⬅️308—Violation of statute not negligence per se, but evidence of negligence.**

Under the rule in the federal courts, which is one of general law, failure of a railroad company to comply with a statutory regulation is not negligence per se, or as matter of law, but only evidence from which negligence may be found as a fact.

**4. Railroads ⬅️309—Measure of care in running special train at crossing stated.**

In an action for injury to plaintiff, who was struck at a highway crossing by a special train on defendant's railroad, an instruction that, as the train was not scheduled, defendant was required to use the utmost diligence and all means to protect travelers on the road, *held* to place too great a burden on defendant, the fact that the train was a special one being a circumstance to be considered by the jury with other facts in determining whether it exercised reasonable care.

**5. Negligence ⬅️122(5)—Presumption from instinct of self-preservation applicable only in absence of evidence.**

In the federal courts the burden of proving contributory negligence rests on defendant, and the presumption arising from the natural instinct of self-preservation is to be indulged in plaintiff's favor only in the entire absence of evidence as to his conduct at the time of the accident.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Action at law by Carlos M. Ramirez Lopez against the American Railroad Company of Porto Rico. Judgment for plaintiff, and defendant brings error. Judgment vacated, verdict set aside, and case remanded.

Francis H. Dexter, of San Juan, Porto Rico, for plaintiff in error.

Jose A. Poventud, of New York City, for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action to recover damages for injuries sustained on the 24th of June, 1922, in a collision between an automobile and the defendant's train at a highway crossing. The accident occurred while the plaintiff was crossing the defendant's track at grade. He was injured and the automobile destroyed. There was a trial by jury in the federal District Court for Porto Rico in

April and May, 1923, and on May 2 a verdict was returned for the plaintiff in the sum of $2,250.

By the Organic Act for Porto Rico of March 2, 1917, section 42 (39 Stat. at Large, p. 966 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803r]), the regular terms of the United States District Court for Porto Rico open the first Monday in November at San Juan, the second Monday in February at Ponce, and the first Monday in May at San Juan. It was at the February term, 1923, at Ponce, that the trial was had and the verdict returned. On the day the verdict was returned the defendant obtained leave to file a motion for a new trial, and at the May term, beginning May 7, 1923, such motion was filed, and after hearing was denied June 4, 1923, on which day judgment was entered for the plaintiff. On June 5, 1923, the defendant filed its petition for a writ of error and assignments of error, and on that day the present writ of error from this court was sued out, which was attested by the Chief Justice of the Supreme Court and approved by the District Judge who tried the case, but was not attested by either the clerk of the District Court or the clerk of this court. Service of the writ of error was accepted by counsel for the plaintiff June 8, and a supersedeas bond was filed, approved by the District Judge. On June 16, 1923, by agreement of counsel, approved by an order of the court, the time for presentation of the bill of exceptions was extended until July 30, 1923, which time was thereafter extended to August 31, 1923. On August 30, 1923, the bill of exceptions herein relied upon was presented to and allowed by Carlos Franco Soto, the acting judge of the District Court, the regular District Judge, Arthur F. Odlin, then being absent from the Island.

The plaintiff has filed a motion asking that the bill of exceptions be stricken from the record (1) apparently asserting that it was allowed at a term subsequent to that at which judgment was entered, and (2) that the acting judge was without authority to allow the bill of exceptions; that it could only be allowed by the judge who tried the cause. He also has moved to dismiss the writ of error, because it was not attested by the clerk of the District Court or of this court.

[1] Proceeding to consider the questions in the order above enumerated, it is evident that the first ground of objection to the allowance of the bill of exceptions is without merit, as the bill was allowed at the term at which judgment was entered, namely, the May term, 1923. The second ground of objection is likewise without merit. By an act of Congress approved January 7, 1913 (37 Stat. at Large, p. 648, c. 6 [Comp. St. § 3787]), it was provided:

"That whenever the United States District Judge of the district of Porto Rico shall be absent from the said district, and that fact shall be made to appear by the certificate in writing of the United States attorney or marshal of that district, filed in the office of the clerk of the United States District Court for said district, or when for any reason the said judge shall or may be disqualified or unable to act as such in any cause pending in the District Court of the United States for Porto Rico, and that fact shall be made to appear either by proper order entered in the record of said cause by the regular District Judge, or by the certificate in writing of the United States attorney or marshal of that district filed in the office of the clerk of the United States District Court for said district, the Governor of Porto Rico may, by writing filed in the said clerk's office, designate a justice of the Supreme Court of Porto Rico either as temporary judge of said District Court or as special judge thereof; and the temporary judge so designated as aforesaid shall have and may exercise within said district, during the absence of the regular District Judge, all the power of every kind by law vested in said District Judge, and after the return of said District Judge to said district, shall continue to have and exercise said powers with respect to any cause, the trial of which shall have been commenced before him or which shall have been submitted to him for decision prior to the return of said District Judge; and the special judge so designated as aforesaid shall have and may exercise within said district all the power of every kind by law vested in said District Judge with respect to any cause named in the writing by the Governor, filed as aforesaid, designating the said special judge as aforesaid: Provided, that no additional compensation shall be paid to either such temporary District Judge or special District Judge for services rendered pursuant to such designation."

And by the Organic Act for Porto Rico of March 2, 1917, section 41 (39 Stat. at Large, p. 966 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803qq]), Congress provided:

"* * * * In case of vacancy or of the

death, absence, or other legal disability on the part of the judge of the said District Court of the United States for Porto Rico, the President of the United States is authorized to designate one of the judges of the Supreme Court of Porto Rico to discharge the duties of judge of said court until such absence or disability shall be removed, and thereupon such judge so designated for said service shall be fully authorized and empowered to perform the duties of said office during such absence or disability of such regular judge, and to sign all necessary papers and records as the acting judge of said court without extra compensation."

It is admitted by the plaintiff that Judge Odlin, the regular District Judge, was absent from Porto Rico at the time of the allowance of the bill of exceptions and it is not contended that Hon. Carlos Franco Soto was not at that time one of the judges of the Supreme Court of Porto Rico, or that he was not designated by the President of the United States to perform the duties of the judge of said court during the absence of the regular judge. Under the circumstances the bill of exceptions was properly allowed. See, on this subject, Guardian Assurance Co. v. Quintana, 227 U. S. 100, 33 S. Ct. 236, 57 L. Ed. 437, argued before the Supreme Court January 6, 1913, and decided January 27, 1913, where in the opinion of the court the Act of January 7, 1913, is referred to.

The motion to dismiss the writ of error must be denied. It is true the writ should have been attested by the clerk of the District Court or by the clerk of this court from which the writ issued. Revised Statutes U. S. § 1004 (Comp. St. § 1663). And prior to the enactment of section 1005 of the Revised Statutes in 1872 this omission would probably have been a fatal objection to its validity and to the exercise of any jurisdiction over the case by this court. But section 1005 provides:

"The Supreme Court may, at any time, in its discretion and upon such terms as it may deem just, allow an amendment of a writ of error, when there is a mistake in the teste of the writ, or a seal to the writ is wanting, or when the writ is made returnable on a day other than the day of the commencement of the term next ensuing the issue of the writ, or when the statement of the title of the action or parties thereto in the writ is defective, if the defect can be remedied by reference to the accompanying record, and in all other particulars of form:

provided, the defect has not prejudiced, and the amendment will not injure, the defendant in error." Comp. St. § 1664.

The power conferred upon the Supreme Court by this section is also conferred upon this court with respect to writs of error issuing from it. Cotter v. Alabama G. S. R. Co., 61 F. 747, 748, 10 C. C. A. 35. The omission complained of being a defect in form within the meaning of section 1005, it may be amended.

We proceed to consider the case on its merits.

In its assignments of error the defendant complains that the court below erred in refusing to direct a verdict in its favor, in giving certain instructions requested by the plaintiff, in refusing certain instructions requested by the defendant, in other instructions given to the jury, and in the exclusion of certain evidence.

The plaintiff's evidence tended to prove that the defendant operated a railroad for hire in Porto Rico, a portion of which extended from the town of Lajas to the town of Boqueron; that a public highway beginning at San Juan ran past the defendant's railroad station in the town of Lajas and crossed at grade that portion of the defendant's railroad extending from Lajas to Boqueron at a point 600 meters from the Lajas railroad station; that said highway, prior to 1916, was a municipal or town road (extending from Lajas towards the west coast of the island), but that in 1916 the Legislature of Porto Rico authorized an issue of bonds by the people of Porto Rico to the amount of $2,000,000, for the construction of roads and bridges (Law No. 71, p. 136, Laws of 1916), in which the portion of the road here in question was designated as one of the roads to be built, maintained and controlled by the Department of the Interior of the Island, namely, from Lajas to the town of Guanica, a distance of 5½ kilometers, and from there to La Parguera; that at the time of the accident in question the Department of the Interior had constructed and was maintaining said highway beyond the crossing in the town of Lajas, where the accident occurred, up to within one kilometer of Guanica, and that the portion so constructed and maintained was opened and being used for public travel; that on the date in question the plaintiff was driving his car northerly on this highway towards Lajas and the defendant's train was coming southerly from the station of Lajas towards the crossing; that as the highway approached the cross-

ing it descended a grade until it reached the point where the railroad crossed it, at which point there was a slight rise over the track; that the view a traveler proceeding northerly toward the crossing had of a train proceeding southerly toward it was obstructed by a rise of land and intervening trees until he reached a point practically upon the track; that the defendant maintained no gates, bars, chains, or flagman at the crossing; that section 12 of the Railroad Law of Porto Rico, approved March 9, 1911, required all public service companies "to construct and maintain chains, gates or other suitable protective devices, at all crossings of insular public roads"; that the defendant's trainmen, when approaching the crossing, were required by law to ring the bell and blow the whistle, but at the time in question did not do so; that, because of the defendant's failure in these respects, the plaintiff, though approaching the crossing slowly, got upon the track without warning or any notice of the approach of the train; that the train was a special one; and that no special train had been run over that branch of the road for some two years.

From this evidence we think the jury, as reasonable men, were warranted in finding that the plaintiff was without fault, that the defendant was negligent and that its negligence was the cause of the plaintiff's injuries.

[2] In connection with its first assignment the defendant contends that the court erred in excluding the certificate (offered by it in evidence) of the secretary of the Public Service Commission of Porto Rico, to the effect that said commission had not issued the certificate of public convenience or necessity called for by section 6, article 3, of the Public Service Act of Porto Rico, approved December 6, 1917, No. 70, for the construction of a public highway across the tracks of a railway, at grade; that until such certificate of public convenience was issued the Department of the Interior had no authority to construct the highway across the defendant's tracks; and that as respects it the road was not an insular highway against which it was required "to construct and maintain chains, gates or other suitable protective devices" at grade crossings, within the meaning of section 3, subdivision (q), of the Public Service Act of 1917. The evidence appears to have been rejected on the ground that the certificate of the Secretary of the Public Service Commission was not competent to prove the fact. But, without regard to that, we think

the evidence was properly rejected for the reason that section 7 of the Public Service Act does not require a certificate of public convenience where, as in this case, an existing town road or highway crossing a railroad track is taken over as an insular road. According to section 397 of the Political Code of Porto Rico, insular public roads are defined to mean "all those highways or public roads that have been or may be built, and are or shall be maintained by insular funds, or those included in the general plan of roads to be built and maintained by insular funds as may hereafter be approved and enacted by the Legislative Assembly of Porto Rico." The evidence in this case is that the road, where the collision occurred, was formerly an old municipal highway which the insular government, under the act of 1916, had taken over as an insular highway, had reconstructed and maintained with insular funds (from Lajas to a point far beyond the crossing), and had suffered to be used for public travel. In fact, the highway from Lajas to Guanica was only 5½ kilometers in length, and, at the time of the accident, had been constructed, except from a point one kilometer from Guanica. It would seem that no other conclusion could reasonably be reached, either by the court or the jury, than that the highway at the point in question was an insular highway, and that the defendant was required by the statute to maintain chains, gates, or other suitable protective devices at the point at which the road crossed its tracks.

[3] At the plaintiff's request and subject to the defendant's exception, the court charged the jury in substance that if they found the highway at the point in question to be an insular public road, that the defendant railroad crossed the same at that point, and that it maintained no chains, bars, or any other suitable device or protection at the crossing, the defendant was guilty of negligence and the jury might find for the plaintiff; that said omission to provide chains, bars, etc., was negligence per se. It also instructed the jury that it was the duty of the engineer and fireman in charge of the train, on approaching the crossing, to blow the whistle and ring the bell, and that if either failed in these respects the defendant was guilty of negligence. The question whether a failure to comply with such statutory regulations is negligence per se, or only evidence of negligence, is not a local question but one of general law, and in the federal courts it is

held that failure in this respect is not negligence per se or as a matter of law, but simply evidence from which negligence may be found as a fact. Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 283, 14 S. Ct. 619, 38 L. Ed. 434; McDonald v. Toledo Consol. St. Ry. Co., 74 F. 104, 107, 108, 20 C. C. A. 322; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 418, 12 S. Ct. 679, 36 L. Ed. 485. See, also, Wright v. Railroad, 4 Allen (Mass.) 283; Hanlon v. Railroad, 129 Mass. 310; Bly v. Railroad, 67 N. H. 474, 30 L. R. A. 303, 68 Am. St. Rep. 681; Clark v. Railroad, 64 N. H. 323, 324, 10 A. 676; State v. Railroad, 58 N. H. 408, 410.

[4] The court also instructed the jury in substance that the defendant, according to its schedule, only ran two regular trains over this portion of its railroad, one at 9 a. m. and one at 3 p. m., and as the train that caused the injuries to the plaintiff was one which was not scheduled as a regular train, but was a special one, the defendant was required to use "the utmost diligence and use all means to protect travelers on the road over such crossing." The defendant excepted to this instruction on the ground that it made it substantially an insurer. We think the instruction imposed too great a burden on the defendant. The jury should have been told that it was the defendant's duty to use reasonable care and caution in approaching the crossing, and that such care and caution depended upon the circumstances surrounding the situation at the time, and that they might, in passing upon the question, take into consideration that the train was a special one, as one of the circumstances.

[5] The jury were also instructed that, in determining whether the plaintiff was guilty of contributory negligence, they must take into consideration the presumption of the natural instinct of self-preservation. The burden of proof on that question, in the federal courts, is on the defendant, and the presumption is to be indulged in the plaintiff's favor only where there is an entire absence of evidence as to his conduct at the time of the accident. Continental, etc., Co. v. Stead, 95 U. S. 161, 164, 24 L. Ed. 403; Texas, etc., Ry. Co. v. Gentry, 163 U. S. 353, 366, 367, 16 S. Ct. 1104, 41 L. Ed. 186; Baltimore, etc., R. R. Co. v. Landrigan, 191 U. S. 461, 473, 474, 24 S. Ct. 137, 48 L. Ed. 262; Looney v. Metropolitan R. R. Co., 200 U. S. 480, 488, 26 S. Ct. 303; 50 L. Ed. 564. In the present case the presumption could not be indulged, as there was evidence disclosing the conduct of the plaintiff down to the time of the accident. In some jurisdictions such a presumption is not allowed to be given weight, whatever may be the state of the evidence. See Wright v. Railroad, 74 N. H. 128, 65 A. 687, 8 L. R. A. (N. S.) 832, 124 Am. St. Rep. 949; Wiwirowski v. Railway, 124 N. Y. 420, 26 N. E. 1023; Cordell v. Railroad, 75 N. Y. 330, 332; Reynolds v. Railroad, 58 N. Y. 248; Moore v. Railroad, 159 Mass. 399, 403, 34 N. E. 366; Livermore v. Railroad, 163 Mass. 132, 133, 39 N. E. 789; Walsh v. Railroad, 171 Mass. 52, 56, 50 N. E. 453; McLane v. Perkins, 92 Me. 39, 46, 42 A. 255, 43 L. R. A. 487; Chase v. Railroad, 77 Me. 62, 52 Am. Rep. 744; Day v. Railroad, 96 Me. 207, 52 A. 771, 90 Am. St. Rep. 335.

We have examined the other assignments of error, but, in view of the conclusions herein reached, we see no occasion for passing on them.

The judgment of the United States District Court for Porto Rico is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs in this court to the plaintiff in error.

ANDERSON, Circuit Judge (dissenting). The gist of this case was as to whether the highway was an insular road. I concur in the conclusion that there was no error by the trial court on that point. I am unable to concur in the view that there were reversible errors in the instructions given to the jury on the questions of the defendant's negligence and plaintiff's contributory negligence.

The instructions given must, of course, be considered in the light of the evidence with which the court was dealing, not merely as abstract propositions of law. There was no contention on the defendant's part that it maintained chains, gates, or other protective devices at this crossing. There was the usual dispute as to whether the bell and whistle were properly sounded. There was no dispute that the plaintiff was caught on the crossing by the train and injured. The case, therefore, came to this: That the accident was due either to the defendant's negligence in failing to maintain protective devices or to give the required signals, one or both, or to the plaintiff's own negligence. There was no third alternative. Cf. Union Pacific Railway v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434;

Grand Trunk v. Ives, 144 U. S. 408, 420, 12 S. Ct. 679, 36 L. Ed. 485.

On the question of defendant's negligence the court instructed the jury that, if they found the highway to be an insular public road and that there were no chains, gates, etc., or if they found that there was failure to blow the whistle or ring the bell, the defendant was guilty of negligence. Under the circumstances, these instructions were correct; for, as already stated, the jury could not have found the accident due to anything else than the lack of proper protective devices or of the required signals, or to the plaintiff's own negligence. In this regard, the case of Union Pacific Railway v. McDonald, supra, is exactly in point. In that case a boy was injured by slipping into a burning slack pit, which the law required the defendant to fence. The trial court instructed the jury that it was the legal duty of the defendant to fence, and that its omission to do so was negligence, and that, the defendant being guilty of negligence, the next question was whether the plaintiff was guilty of contributory negligence. That question, also, on the undisputed facts in that case, the court determined, as matter of law, in favor of the company, and therefore told the jury that there was nothing for them except the question of damages. On a careful review of the authorities, the Supreme Court unanimously affirmed this judgment. The case is therefore an authority, binding on us, for the exact reverse of the proposition in support of which my brethren cite it. I can find no difference in this regard between the local law and general law. If there is any difference, I think the local rule as to highway accidents should prevail.

If, in the case at bar, there had been evidence warranting the jury in finding that the defendant's negligence in not providing chains, gates, etc., or in not giving the signal, was not the proximate cause of the plaintiff's injury, provided he was not found lacking due care, then the jury might have been misdirected. But the defendant's failure in these regards was negligence per se, and the jury were properly so instructed; and there was no occasion, on the evidence in this case, to charge them on any other aspects of negligence, except as to the plaintiff's contributory negligence, for there was no contention that the accident was or could have been due to any other cause, except the defendant's negligence (if the highway was found, as it properly was, to

be an insular highway), or to the plaintiff's contributory negligence.

On the question of contributory negligence, the plaintiff and not the defendant had reason to complain: for the court put the burden of proving due care upon the plaintiff, whereas in the federal courts the rule has always been the other way.

But, in spite of this rule, the court, against the plaintiff's objection, instructed the jury as follows:

"If you believe from the evidence that plaintiff was well acquainted with the crossing and the road over which he was traveling, and that he knew that there were no gates, chains, or watchman maintained by the defendant company at such crossing, then it was the duty of plaintiff upon approaching such crossing to take all the precautions that a reasonably prudent man would or should have taken, by looking and listening for the approach of any train that might be moving at the time on the track or near such crossing; and if the crossing was a dangerous one, and the trains could not be seen from the road on which plaintiff was traveling by reason of obstructions to the view, plaintiff should have stopped the automobile which he was driving, and assured himself absolutely that no train was approaching before he attempted to cross the track. You are further instructed that such looking, listening, or stopping must have been in such a manner as to inform plaintiff positively whether a train was coming or not."

And again, at the end of the charge, after a quotation from an opinion of Mr. Justice Aldrey of the Supreme Court of Porto Rico, to the same general effect, in Dominguez v. Porto Rico Ry., Light & Power Co., 19 Porto Rico, 1034, the court said:

"If you should find from the evidence that he was in control of the car himself, and knew that the railroad track was there, and that he carelessly and without proper reflection and thought approached that crossing, without taking pains to stop, look, and listen, and observe whether or not a train was coming, and that it was his act that caused the accident, then it would be your duty to find for the defendant; but if you think he exercised all reasonable care, if you find he controlled that automobile himself, and did stop, and did look, and did listen, and did use all the precautions which a reasonably prudent man should take, and in spite of that fact that, when he got on the track, there through the neg-

ligence of the railroad company, by reason of the failure to give proper warning, that the accident was caused by them alone, then he is entitled to such damages as you think will recompense him, as in the prayer of his complaint," etc.

To repeat, it was the plaintiff, and not the defendant, that had cause to complain of the instructions given on the question of contributory negligence.

I cannot agree that surviving victims of negligent accidents, as well as killed victims, are not entitled to be indulged in the presumption of the natural instinct of self-preservation. The cases cited do not, as I read them, support so illogical a proposition.

The defendant also complains that the jury were instructed in substance that the defendant, according to its schedule, ran only two regular trains over this portion of its railroad, one at 9 a. m. and one at 3 p. m., and that the train that caused the injury to the plaintiff was one which was not scheduled as a regular train, but was a special train; that the defendant was required to use "the utmost diligence and use all means to protect travelers on the road over such crossing."

Standing alone, as an abstract proposition and without regard to the circumstances of this case, this instruction was wrong; but under the circumstances of this case it was not reversible error, for, as already pointed out, this accident was due either to the defendant's negligence in failing to maintain the statutory protective devices at a grade crossing on an insular highway, failure to give the required signals, or both, or it was due to the plaintiff's own negligence. There was, therefore, no difference between the requirement of reasonable care and the utmost diligence. There was nothing in the case on which a jury could have found that utmost diligence would have required more of the defendant than the statute required of it.

Nor does this instruction have any tendency to lighten the burden which the court erroneously put upon the plaintiff to show affirmatively that he was not guilty of contributory negligence. The jury were not instructed that the plaintiff's duty in that regard was made lighter by reason of a right to rely upon any diligence or care possible to be shown by the defendant, beyond the requirement for gates, protective devices, or signals.

Finally, the instruction held error was in effect reversed or modified by a later instruction, given against the plaintiff's exception, as follows:.

"You are instructed that the defendant company as a public carrier had the right to run special trains at any time its interest or the convenience of the public may require, that defendant is under no obligation to the public to give notice in advance of the running of such special trains, and that persons approaching the tracks of the railroad company are not justified in failing to take the same precautions to avoid injury that they must reasonably do in case of regular trains."

With such directions, the jury could not have been led astray on this minor point.

The charge was, as already indicated, in general effect a defendant's charge. The jury, nevertheless, returned a verdict for the plaintiff. Dealing with this record, as the statute (Judicial Code, § 269, as amended by Act Feb. 26, 1919, 40 Stat. 1181 [Comp. St. Ann. Supp. 1919, § 1246]) requires us to do, I find no error prejudicial to defendant. I think the judgment below should be affirmed.